UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| MARY ANGELA JOHNSON, | ) |  |
|---|---|---|
|   | ) |  |
| Plaintiff, | ) |  |
|   | ) |  |
| vs. | ) | CAUSE NO. 1:13-cv-0809-WTL-MJD |
|   | ) |  |
| JOHN LAYTON, SHERIFF OF MARION | ) |  |
| COUNTY, INDIANA, et al., | ) |  |
|   | ) |  |
| Defendants. | ) |  |

## ENTRY ON MOTION TO DISMISS

This cause is before the Court on Defendants Health and Hospital Corporation of Marion County d/b/a Wishard Memorial Hospital ("Wishard"), William Snyder, and Travis Steele's motion to dismiss (dkt. no. 43). This motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the following reasons.

### I. APPLICABLE STANDARD

The Defendants move to dismiss Johnson's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Amended Complaint fails to state a claim for which relief can be granted. In reviewing a Rule 12(b)(6) motion, the Court "must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. National Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). For a claim to survive a motion to dismiss for failure to state a claim, it must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (omission in original). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Agnew*, 683 F.3d at 334 (citations omitted). A complaint's factual

allegations are plausible if they "raise the right to relief above the speculative level." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 556 (2007).

## II. BACKGROUND

On or about April 24, 2011, Plaintiff Mary Angela Johnson was on a first date with Scott Newton. At some point during the evening, Johnson and Newton separated so Johnson could make a phone call to check on her young daughter. While making that phone call in or near a downtown Indianapolis, Indiana parking garage, Johnson was attacked and raped, suffering a concussion and other injuries.

At some point after she was attacked, someone found her lying on the ground and called 911. Indianapolis Metropolitan Police Department officers responded to the call, and when they arrived they found her conscious and responsive. Unfortunately, at this time, Johnson did not recall being raped. The officers indicated that she had slurred speech and was unsteady on her feet, and suspected she was intoxicated. An ambulance was subsequently called, and Johnson was transported to Wishard for an examination.

Johnson was treated in the emergency room at Wishard for her injuries; her system was also tested for the presence of seven different drugs, but all results came back negative. During her examination, Johnson kicked a paramedic and yelled obscenities at Wishard staff. She was thus placed in a holding area of the hospital by Special Deputies Snyder and Steele, then law enforcement officers with the Marion County Sheriff's Office ("MCSO").[1] Snyder reported that

---

[1] As noted in Johnson's Amended Complaint, Wishard and the MCSO entered into a cooperative agreement whereby Deputies Snyder and Steele were appointed as Special Deputy Sheriffs and received limited law enforcement powers while they worked at Wishard in its security department. As such, Deputies Snyder and Steele were bound by all MCSO operating procedures and all Wishard policies.

2

Johnson had slurred speech, bloodshot eyes, dilated pupils, and smelled of alcohol.[2] Because of her behavior, Snyder and Steele arrested Johnson for battery, disorderly conduct, and public intoxication and transported her to the Marion County Jail.

Once there, Johnson asked to be taken back to Wishard because she remembered that she had been raped. She was subsequently transported back to the hospital, where she was examined by a forensic nurse and prescribed anti-HIV medication. After this examination was concluded, she was taken back to the Marion County Jail; however, the nurse failed to send the anti-HIV medication with her. Johnson told the staff at the jail that she did not have this medication, but nothing was ever done about it.

Johnson was held at the Marion County Jail for a period of time and then released. All charges against her were dismissed in September 2011. In August 2011, Johnson timely filed her notice of tort claims, and she filed suit in Marion County Superior Court on April 23, 2013. The case was removed to this Court on May 16, 2013.

### III. DISCUSSION

Johnson brings eight claims against the Defendants: (1) a *Monell* claim against the Sheriff of Marion County; (2) a *Monell* claim against Wishard; (3) equal protection claims against Deputies Snyder and Steele; (4) negligence claims against all Defendants; (5) a negligent retention and training claim against Wishard; (6) invasion of privacy by false light claims against all Defendants; (7) intentional infliction of emotional distress ("IIED") claims against all Defendants; and (8) negligent infliction of emotional distress ("NIED") claims against all Defendants. Defendants Wishard, Snyder, and Steele move to dismiss the claims against them. Their arguments will be addressed, in turn, below.

---

[2] In her Amended Complaint, Johnson states she had approximately five drinks over the course of six hours on the night she was raped.

## A. *Monell* Claim Against Defendant Wishard

In Count II of her Amended Complaint, Johnson brings a *Monell* claim against Defendant Wishard claiming that it violated her equal protection rights by failing to have adequate policies in place for the protection of female victims of sexual assault. "To state a *Monell* claim against [Wishard] for violation of [Johnson's] right to equal protection, [Johnson is] required to plead[ ] factual content that allows the court to draw the reasonable inference that [Wishard] maintained a policy, custom, or practice of intentional discrimination against a class of persons to which [Johnson] belonged." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks omitted). The specific policy Johnson refers to in her Amended Complaint is the cooperative agreement between Wishard and the MCSO.

The pertinent portions of the policy included in Johnson's Amended Complaint are as follow:

- Every Special Deputy shall refrain from using unnecessary force at any time;

- Every special deputy shall avoid using uncomplimentary terms of speech to any inmate, detainee, or citizen, and shall not intentionally antagonize any person with whom he comes into contact;

- No special deputy shall at any time, or for any reason, willfully subject any person to cruel treatment or willfully neglect any necessary humane action which circumstances may require; and

- Alleged victims of sexual assault shall be referred under appropriate security provisions to the emergency room at Wishard or another qualified community facility for treatment and gathering of evidence.

Amended Complaint ¶¶ 81-84. As Wishard notes, this "is exactly the sort of policy one would hope to see from a hospital with regard to its security personnel." Defs.' Brief at 5. Johnson, however, argues that "[t]he manner in which Wishard participated in the MCSO's program failed to protect female victims of sexual assault." Response at 4. Specifically, she argues that Wishard

4

had a custom or practice of failing to comply with MCSO policies, and describes three separate instances where Deputies Snyder and Steele violated the MCSO policy.

First, in September 2003, Deputy Steele was issued a "final warning" and received a five-day suspension for providing false information to Wishard regarding a fight he assisted in. Second, in December 2007, a Wishard employee noted that Snyder had a "seriously sarcastic and almost negative attitude towards staff, patients, and visitors." Finally, in June 2008, the mother of a patient complained that Deputies Snyder and Steele teased her son while they were escorting him out of the hospital.

Johnson argues that these instances show that Wishard had a custom or policy of failing to comply with the MCSO polices. The Court does not agree. Deputy Snyder was reprimanded for his actions in 2003, and it does not appear to the Court that having a negative attitude violates the MCSO. This leaves one instance of alleged teasing committed by the Deputies, which does not rise to the level of a policy, practice or custom needed for a *Monell* claim. However, Johnson's argument is flawed in a more fundamental aspect. As noted above, in order to survive a motion to dismiss, Johnson has to plead factual content sufficient to show that Wishard maintained a policy, custom, or practice of intentional discrimination against female rape victims. The Court fails to see the connection, therefore, between the above failures and Johnson's alleged equal rights violation. These instances simply do not illustrate that Wishard maintained a policy, custom, or practice of intentionally discriminating against female rape victims. Her *Monell* claim based on the MCSO policies fails.

Johnson also argues that Wishard maintained a policy of relying on opinions of first responders—"[r]ather than confirming the information provided, initiating an investigation, or investigating the matter themselves, Wishard employees simply assumed and accepted the

opinions of the first responders as the Plaintiff's diagnosis and failed to investigate any further." Response at 6. Once again, the Court fails to see how this is a policy of *intentionally* discriminating against female rape victims. Nevertheless, it will address Johnson's arguments in support.

First, she argues that pursuant to Indiana Code section 12-23-15-2, Wishard staff should have performed a test to determine if she had alcohol in her system rather than simply accept the first responders' opinion that she was intoxicated. She argues that if they had, they may have realized she was a victim of a rape, which would have explained her behavior. This Code section states, "[a]n individual to be taken to the city lock-up or county jail shall be evaluated at the earliest possible time for *nonalcoholic* factors that may be contributing to the appearance of intoxication." Ind. Code § 12-23-15-2 (emphasis added). In other words, it requires an evaluation for *factors other than alcohol* that may be causing an individual to appear to be intoxicated—it does not require an affirmative test to confirm that alcohol is the cause. Wishard did not err in failing to conduct a test for alcohol, and this Code section lends no support to Johnson's *Monell* claim.

Second, she argues that by arresting her and taking her to the Marion County Jail, Deputies Snyder and Steele "affirmatively suppressed any investigation into [her] circumstances," Response at 6, citing *Whitlock v. Bruggemann*, 682 F.3d 567 (7th Cir. 2012), in support. The Court does not agree. Snyder and Steele could not have affirmatively suppressed an investigation into her rape if neither knew she had been raped in the first place. This is unlike the officers in *Whitlock*, who allegedly conspired to frame two men whom they knew were innocent of murder by suppressing exculpatory evidence and convincing witnesses to name the men as the murderers. Johnson has not alleged any facts to suggest that Snyder and Steele knew

6

or even had reason to suspect that she was a rape victim when she first arrived to Wishard. This argument also fails.

The remainder of Johnson's Amended Complaint is chalk-full of conclusory allegations that cannot survive a motion to dismiss. *See, e.g.*, Amended Complaint ¶¶ 109-115 ("Wishard maintained a policy or custom of failing to timely investigate Plaintiff's rape . . . Wishard maintained a policy or custom of ignoring the seriousness of sexual assault and victims of sexual assaults . . . Wishard established a policy or practice of intentionally discriminating against uncooperative female arrestees brought into the hospital."). Undoubtedly, what happened to Johnson on the night of April 24, 2011, was horrible and most unfortunate; however, she has failed to allege sufficient facts that Wishard maintained a policy, custom, or practice of intentionally discriminating against female rape victims. Accordingly, Wishard's motion to dismiss her *Monell* claim is **GRANTED**.

### B. Equal Protection Claims against Snyder and Steele

In Count III of her Amended Complaint, Johnson brings a "class-of-one" equal protection claim against Deputies Snyder and Steele, arguing that she "was intentionally treated differently from other similarly situated individuals and [that] there was no basis for this difference." *Id*. ¶ 127; *see Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) ("To state a so-called class-of-one equal protection claim, [Johnson] must allege that [s]he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.") (internal quotation marks omitted). The Seventh Circuit has "held that class-of-one claims can be brought based on allegations of the irrational or malicious application of law enforcement powers." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). In her Amended Complaint, Johnson alleges that "Special Deputies Snyder and/or Steele selectively

7

withdrew their ability to provide [her] with police protection based on her alleged uncooperative and/or combative behavior that was the product of her being sexually assaulted" and "that they had no justification, based on their public duties, for singling [her] out [] for unfavorable treatment." Amended Complaint ¶¶ 132-33.

The Court notes that the standard for class-of-one claims in the Seventh Circuit "is in flux." *Thayer v. Chiczewski*, 705 F.3d 237, 254 (7th Cir. 2012). As Johnson notes, whether or not a plaintiff also has to also prove improper motive or illegitimate animus on behalf of law enforcement officers is currently undecided. *See Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir. 2012) (noting, in a per curiam opinion, two different standards for a class-of-one equal protection claim against law enforcement). However, like the Seventh Circuit concluded in *Thayer*, this Court need not "decide what standard announced in *Del Marcelle* is correct," *Thayer*, 705 F.3d at 255, because it agrees with Snyder and Steel that they are entitled to qualified immunity.

"'The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013) (quoting *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012)). The Supreme Court has established a two-part inquiry to determine whether qualified immunity is appropriate: (1) whether the facts alleged make out a violation of a constitutional right; and (2) whether that constitutional right clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Snyder and Steele first argue that the facts alleged in Johnson's Amended Complaint do not illustrate that her constitutional rights were violated. They note that Johnson acknowledges

8

that Snyder observed her shouting obscenities at Wishard staff and kicking a paramedic. Therefore, they argue that there was a rational basis for treating her differently from other patients in the emergency room: she battered a paramedic and posed a threat to other staff and patients. In response, Johnson states, "Defendants Snyder and Steele irrationally or maliciously applied law enforcement powers when they arrested [her] and suppressed the ability to conduct an immediate investigation concerning the sexual assault that she suffered. Defendants withdrew their police protection of [her] based upon her allegedly belligerent and uncooperative behavior." Response at 8. The problem is that Johnson herself does not dispute that she acted belligerently and uncooperatively while at Wishard.[3] Rather, she seems to argue that Snyder and Steele should have inferred that she was acting belligerently and uncooperatively because she was raped, not because she was intoxicated. This, however, cannot support an equal protection claim under either standard announced in *Del Marcelle*, as Johnson has not pled sufficient facts to allege that "intentional and irrational discrimination" occurred, let alone that Snyder and Steele "acted . . . for personal reasons, with discriminatory intent and effect." *Del Marcelle*, 680 F.3d at 917, 889. Johnson has not alleged a constitutional violation because neither Snyder nor Steele acted maliciously or irrationally in arresting her due to her uncooperative and belligerent behavior.

In examining the second prong of the qualified immunity test, it is also clear that no reasonable officer in Snyder and Steele's shoes would have thought that their conduct was unlawful. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable

---

[3] This is why Johnson's argument that "the question of immunity is depended upon which view of the facts is accepted by the jury" fails. Response at 9. She states in her Amended Complaint that Snyder saw her kick a paramedic and yell obscenities at staff. There are no disputed facts, therefore, for a jury to resolve with respect to this issue.

officer that his conduct was unlawful in the situation he confronted."). In the Court's opinion, a reasonable officer would view arresting an uncooperative, belligerent person who poses a threat to hospital staff and patients as lawful. Snyder and Steel's motion to dismiss Johnson's class-of-one claim is **GRANTED**.

### C. State Law Claims

Counts IV through VIII of Johnson's Amended Complaint allege violations of Indiana law. Each will be addressed, in turn, below.

#### i. *Negligence and NIED Claims*

"The tort of negligence has three elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach." *Romero v. Brady*, --N.E.3d--, 2014 WL 977496 (Ind. Ct. App. Mar. 13, 2014) (citing *Rhodes v. Wright,* 805 N.E.2d 382, 385 (Ind. 2004)). In her Amended Complaint, Johnson alleges that the Defendants owed her a duty, that they breached that duty by allowing their conduct or inaction to fall below the standard of care owed, and that their breach proximately caused her injuries.

With respect to her negligence claim against Wishard, Johnson alleges that "[i]n failing to properly treat [her], Wishard breached their duty of care for her." Response at 11. Wishard argues that this claim, based on Johnson's medical care, cannot be brought because Johnson failed to proceed through a medical review panel as required by Indiana's Medical Malpractice Act ("MMA"). *See* Ind. Code § 34-18-8-4 ("[A]n action against a health care provider may not be commenced in a court in Indiana before: the claimant's proposed complaint has been presented to a medical review panel . . . and an opinion is given by the panel."). The MMA defines "malpractice" as "a tort or breach of contract based on health care or professional

10

services that were provided, or that should have been provided, by a health care provider, to a patient." Ind. Code § 34-18-2-18. The Indiana Court of Appeals has further explained:

> Thus, medical malpractice is the breach of the duty owed by a healthcare provider to its patient. The duty arises from the contractual relationship entered into between the provider and the patient. Our Supreme Court has defined the duty as an implied contract that the provider possesses the ordinary knowledge and skill of its profession and will utilize such attributes in a reasonable, diligent, and careful manner in undertaking the care and treatment of its patient.

*Madison Ctr., Inc. v. R.R.K.*, 853 N.E.2d 1286, 1288 (Ind. Ct. App. 2006).

They key question, therefore, is whether Johnson's claim is one for malpractice—in other words, "whether [her] claim is based on [Wishard's] behavior or practices while acting in [its] professional capacity as a provider of medical services." *Id.* (internal quotation marks omitted). Inasmuch as Johnson alleges improper medical treatment, in the Court's view, her claim is just that. Essentially, what Johnson argues is that Wishard should have run additional and/or different medical tests, conducted a more thorough examination of her body, or investigated her situation more thoroughly such that it might have discovered she had been raped. These allegations are clearly based on Wishard's behavior or practices while acting in its professional capacity as a provider of medical services. As such, this claim is barred as Johnson did not first proceed through a medical review panel as required by the MMA.

Turning now to Johnson's negligence claim against Deputies Snyder and Steele; both argue that Johnson has failed to allege that they acted negligently. They argue that as security personnel for the hospital, they did owe a duty to Johnson, and other patients in the emergency room—a duty to protect. As the Indiana Court of Appeals noted:

> There can be little dispute that a hospital's emergency room can be the scene of violent and criminal behavior. Violent and intoxicated individuals, those involved in crimes, and people injured in domestic disputes are routinely brought to the emergency room for treatment. In some cases, the violence spills into the emergency room itself and measures must be taken to control the situation. This was recognized by the Center in the establishment of the duties of its security

11

officers. The responsibilities of the security officer whose job was to patrol the entire emergency department included "monitor[ing] unruly or violent patients and restrain[ing], if necessary."

*Lane v. St. Joseph's Reg'l Med. Ctr.*, 817 N.E.2d 266, 273 (Ind. Ct. App. 2004). This is similar to Snyder and Steele's role in that they too were charged with keeping the peace and had the authority to make an arrest and/or detain a person in custody if needed. *See* Amended Complaint ¶ 77.

Johnson seems to allege in her Response that Snyder and Steel owed her a greater duty:

> When law enforcement prevents or, as in the case in this matter, interferes, with a victim of sexual assault obtaining treatment and having her crime properly investigated, a policy of preventing future harm and the morality of such an action should place a duty upon those individuals to take care in their actions. This duty could not be more pronounced and necessary than when Defendants are posted at a hospital and are in a position to see the greatest concentration of sexual assault victims and be in the simultaneous position to place them under arrest for behavior caused by significant trauma.

Response at 12-13. The Court does not agree. It is unclear why Johnson believes Snyder and Steele had a duty to investigate whether she was raped—they were security personnel for the hospital. Their duty was to protect Wishard staff and patients, as well as protect Johnson from harming herself. In the Court's view, they did just that. Johnson herself acknowledges that the Deputies observed her acting uncooperatively and belligerently, kicking a paramedic and yelling obscenities at hospital staff. Their duty was to "keep the peace" and obtain control over the situation. By arresting Johnson and transporting her to the Marion County Jail, they fulfilled that duty.

Again, the Court acknowledges that Johnson's situation is an unfathomable one—it certainly is most unfortunate that Johnson had to experience what she did. However, neither Snyder nor Steele was under any special duty to speculate that Johnson may be acting uncontrollably because she was raped; they simply were not under a duty to further investigate a

12

rape that they did not know occurred. Johnson has not directed the Court to any law or policy suggesting the existence of such a duty. Accordingly, the Defendants' motion to dismiss Johnson's negligence claims is **GRANTED**. As the Defendants note, because Johnson's negligence claim fails, so too does her NIED claim. *See Spangler v. Bechtel*, 958 N.E.2d 458, 466 (Ind. 2011) (noting that under any scenario that can constitute NIED, "the defendant's negligence in breaching a legal duty is a required predicate"). Accordingly, Johnson's NIED claim is also **DISMISSED**.

### ii. Negligent Retention and Training

Indiana recognizes the tort of negligent retention and training, and has adopted the Restatement (Second) of Torts as the standard:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant
>   (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>   (ii) is using a chattel of the master, and
>
> (b) the master
>   (i) knows or has reason to know that he has the ability to control his servant, and
>   (ii) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 317 (1965); *see also Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.*, 897 N.E.2d 507, 512 (Ind. Ct. App. 2008). "Under the Restatement, to determine whether an employer is liable for negligent hiring or retention of an employee, the court must determine if the employer exercised reasonable care." *Sandage*, 897 N.E.2d at 512.

In her Amended Complaint, Johnson alleges that "Wishard failed to exercise reasonable care with respect to training of Special Deputies Steele and Snyder in how to identify, interact with, and/or properly investigate females who have suffered assault and rape." Amended Complaint ¶ 144. Again, the Court notes that Snyder and Steele were employed as Special Deputies at Wishard to provide *security* for the hospital. In her Amended Complaint, Johnson notes that Deputies Snyder and Steele had the "authority to keep the Peace" and the "authority to make arrest and detain in custody any person arrested until the cause of such arrest has been investigated." *Id*. ¶ 77. Deputies Snyder and Steele were neither police detectives nor investigators. Therefore, her claim that Wishard failed to train them in this regard is irrelevant.

Johnson also alleges that and that "Wishard failed to exercise reasonable care with respect to retention of Special Deputies Steele [and] Snyder when it had information that both had participated in activities that violated MCSO's requirements for Special Deputy powers." Amended Complaint ¶ 145. Again, Johnson's Amended Complaint states: 1) Steele provided false information to Wishard; 2) Snyder was reported to have a negative attitude; and 3) Snyder and Steele teased a young boy as they escorted him out of the hospital. As the Defendants note, "an employer may be liable for retaining an employee only if he knows the employee is in the habit of misconducting himself in a manner dangerous to others." *Briggs v. Finley*, 631 N.E.2d 959, 966-67 (Ind. Ct. App. 1994). These three instances do not constitute "habitual misconduct nor endangerment to others." *Id*. at 967. Accordingly, Wishard's motion to dismiss Johnson's negligent training and retention claim is **GRANTED**.

### iii. Invasion of Privacy by False Light

"The tort of invasion of privacy by false light is described as publicity that unreasonably places the other in a false light before the public." *Curry v. Whitaker*, 943 N.E.2d 354, 359 (Ind. Ct. App. 2011). Indiana has used the Restatement (Second) of Torts to further define this tort:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
>> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>>
>> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 524 (Ind. Ct. App. 2001) (quoting Restatement (Second) of Torts § 625E (1997)).

Johnson's Amended Complaint states that she "was arrested and prosecuted on [three criminal] charges when in actuality she was the victim of a sexual assault who was suffering from the effects of that assault." Amended Complaint ¶ 149. In other words the Defendants put her in a false light by "publically treat[ing] and present[ing] [her] as a criminal when she was actually a victim." Response at 15. The Defendants argue that being the victim of a rape might provide an alternate explanation for why Johnson acted the way she did, but that it does not show that they made any false statements about her. *See Curry v. Whitaker*, 943 N.E.2d 354, 359 (Ind. Ct. App. 2011) ("A plaintiff cannot succeed on an invasion of privacy by false light claim if the alleged communication is accurate.").

Ultimately, the Court agrees. As noted above, Johnson herself acknowledges that the Deputies saw her kick a paramedic and yell obscenities at Wishard staff—this was enough for Snyder and Steele to believe they had cause to arrest her for battery and disorderly conduct. She

also admits that the Deputies observed her with bloodshot eyes, dilated pupils, slurred speech, and an odor of alcohol.[4] Johnson has not pled sufficient facts to suggest that it is plausible that the Defendants knew she had not engaged in the crimes for which she was arrested and/or acted with reckless disregard to that fact. Accordingly, her invasion of privacy by false light is also **DISMISSED**.

---

[4] Once again, Johnson argues that Wishard should have tested her for alcohol, arguing that if they had, the test would have revealed her conduct was not the result of intoxication but the results of being raped, eliminating the need to send her to jail and label her a "criminal." As noted above, the Code section she cites, Ind. Code. § 12-23-15-2, does not support this. Neither does *Pittman v. State*, 971 N.E.2d 147 (Ind. Ct. App. 2012) which noted the following:

> If we construed the statute as Pittman urges, i.e., as requiring the administering of chemical or medical tests for the purpose of discovering whether nonalcoholic factors might be the cause of the behavior in question, then we would be saddling the State with the near-impossible task of proving a negative. It would be tantamount to forcing the State to *disprove* that the subject's behavior was caused by anything other than ingestion of alcohol. For example, a medical test would be required to prove that the subject had not suffered a hypoglycemic attack, or a seizure, or a stroke, or had experienced a severe or adverse reaction to prescription medication, or had sustained a concussion—and so on. The futility of embarking on such a quest is obvious and surely was not what the legislature intended. We conclude instead that the statute means what it says—having observed what appear to be behavioral symptoms of alcohol intoxication, attending officers must evaluate the situation and the person as soon as is practicable to determine whether the suspect behavior has an innocent cause. This may or may not require, for example, a blood test or a physical examination. The circumstances will dictate what a reasonable evaluation entails, and most especially whether it entails the administering of medical or chemical tests. . . . Under these circumstances, the detection of the strong smell of alcohol on Pittman's breath obviated the need to perform any further evaluation. The detection of that odor, coupled with her observation of Pittman's other behaviors, in light of the totality of the circumstances then known to Officer Craney, satisfied the statute's requirements.

*Id*. at 150-51. Despite the fact that *Pittman* is a criminal case appealing the sufficiency of the evidence, like *Pittman*, the circumstances known to the Special Deputies and Wishard at the time obviated any need to conduct further tests—let alone, perform a blood test to confirm their suspicion that Johnson was intoxicated.

*iv.*     IIED

Indiana recognizes the tort of IIED as "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Johnson ex rel. Indiana Dep't of Child Servs. v. Marion Cnty. Coroner's Office*, 971 N.E.2d 151, 162 (Ind. Ct. App. 2012) (quoting *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991)). Johnson argues that "[i]t is certainly outrageous for officers of the law to arrest a victim of sexual assault and battery for their own convenience because they did not want to deal with her behavior." Response at 15. If those were the facts of this case, the Court might very well agree with Johnson. However, Johnson has simply not alleged any facts to suggest that Wishard, Snyder, and Steele were aware of the fact that she was a rape victim when they arrested her. Accordingly, the Court does not view their conduct to be "outrageous," and her IIED claim is **DISMISSED**.

### IV.     CONCLUSION

Defendants Wishard, Snyder, and Steele's motion to dismiss (dkt. no. 43) is **GRANTED IN ITS ENTIRETY** and those Defendants are **DISMISSED** from this case. Because claims remain against Defendant John Layton, Sheriff of Marion County, Indiana, no final judgment will issue at this time.

SO ORDERED:  04/18/2014

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification